UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:   CASE NO.

**LENA L. BOUDREAUX**   **09-12724**
SECTION A
DEBTOR

CHAPTER 13

## REASONS FOR DECISION

This matter came before the Court on October 27, 2009, on the Motion to Lift Stay filed by Reverse Mortgage Solutions, Inc., as assignee of Standard Mortgage Corp., ("RMS")[1] and the Opposition filed by Lena L. Boudreaux ("Debtor").[2] The Court ordered post-hearing briefs, which were filed on November 30, 2009.[3] After the filing of the briefs, the Court took the matter under advisement.

**I. Facts**

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on August 27, 2009 ("Petition Date").

On May 10, 2004, Debtor executed a reverse mortgage on her property at 4231-33 S. Tonti Street, New Orleans, in favor of RMS. The mortgage required Debtor to maintain insurance and satisfy all property taxes accruing on the property in exchange for monthly payments through August 29, 2071. At the end of the term, the property is subject to sale to satisfy the amounts advanced with interest.

---

[1] Pl. 12.

[2] Pl. 18.

[3] Pl. 28 and 29.

Prior to filing, Debtor failed to maintain insurance on the property. As a result, RMS declared the contract immediately payable in full.[4] Both Debtor and RMS agree that the loan was fully accelerated on the Petition Date.[5]

Debtor proposes to pay the past due insurance premiums, taxes, and attorneys' fees, to RMS through her Chapter 13 plan ("the Plan").[6] RMS contends that Debtor cannot "de-accelerate" the debt and modify the secured loan by curing the defaults over the length of the Plan and reinstating the contract.

## II. Law and Analysis

A plan may not modify the rights of a secured creditor if the claim is secured by the debtor's principal residence.[7] However, there are exceptions. A prepetition default that results in the acceleration of the debt may be cured in one of two ways. The entire debt may be repaid within the plan term under repayment terms approved by the Court.[8] Alternatively, the past due prepetition amounts may be satisfied over the term of the plan such that on the plan's completion, the loan will

---

[4] Pl. 12, Exh. B, ¶ 9.

[5] Pl. 28, p. 2; Pl. 29, p. 1.

[6] Pl. 20.

[7] 11 U.S.C. § 1322(b)(2).

[8] 11 U.S.C. § 1322(c)(2).

be current and its remaining balance satisfied as originally contracted. In *Grubbs v. Houston First American Savings Association,*[9] an *en banc* Fifth Circuit explained:

> Section 1322(b) of the Code, construed in light of its legislative history and of its context within Chapter 13 as a whole, evinces no legislative intent that a home-mortgagor debtor is barred either (a) from curing a pre-petition acceleration into maturity of the unpaid installments due upon his home mortgage, or (b) from proposing (in his Chapter 13)plan for consideration by the bankruptcy court) that all past due or matured amounts secured by his home mortgage be paid during the term of his plan, if approved by the court - so that, thereby, proceedings upon foreclosure of his home mortgage may be properly stayed, while permitting the debtor to pay off his arrearages in accordance with the terms of the plan confirmed by the court.[10]

RMS argues that *Grubbs* is distinguishable because a reverse mortgage is not a "conventional loan," does not have regular installment payments, and is subject to acceleration under Housing and Urban Development ("HUD") regulations which do not provide for cure. RMS does not cite a single case in support of its position.

Section 1322 governs all loans created by agreement that are secured by the debtor's primary residence.[11] Contrary to RMS' assertion, a reverse mortgage is nothing more than a contractual obligation between the parties. Debtor's monetary obligations are secured by a security interest over his primary residence. As such, a reverse mortgage falls squarely within the holding of *Grubbs*. The fact that Debtor's monetary obligations are not specifically delineated under the note by amount or time is of no effect. Debtor's obligation to pay property taxes when due in full, as well as to insure the property against all risks, obligates Debtor to monetary satisfaction of her obligations on

---

[9] *Grubbs v. Houston First American Savings Association*, 730 F.2d 236 (5th Cir. 1984); *see also In re Taddeo*, 685 F.2d 24 (2nd Cir. 1982) and *Matter of Clark*, 738 F.2d 869 (7th Cir. 1984).

[10] *Id*. at 237.

[11] 11 U.S.C. §§ 1322(b)(2) and 101(51).

a timely basis. In addition, the monthly installments paid by RMS to Debtor are nothing other than advances on a loan subject to repayment with interest upon maturity or Debtor's death.

RMS' argument that HUD regulations do not provide for the de-acceleration of the debt is also without support. The terms of RMS' mortgage are directly contrary to its position. Paragraph 11 of the mortgage provides:

> 11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.[12]

Debtor's case is comparable to *In re Carter*.[13] In *Carter*, the debtor's mother executed a reverse mortgage in favor of a creditor also subject to HUD regulations. The loan matured when the debtor's mother died, and the debtor inherited a 20% interest in the home. The *Carter* Court ruled that the creditor had an *in rem* claim against the debtor's property that could be included in the debtor's Chapter 13 plan.[14] The Court also ruled that the debtor could pay the full debt through the plan.

Similarly in *In re Wilcox*,[15] the debtor's father executed a reverse mortgage in favor of the creditor. The debtor's father died prepetition, leaving the debtor a 50% interest in the home. The

---

[12] Pl. 12, Exh. B.

[13] *In re Carter*, 2009 WL 5215399 (Bankr.S.D.Tex. 2009).

[14] *Id*. citing *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

[15] *In re Wilcox*, 209 B.R. 181 (Bankr.E.D.N.Y. 1996).

debt was accelerated upon the death of the debtor's father, so the full balance was owed prepetition. The debtor proposed to pay the full balance through his Chapter 13 plan. The Court found:

> [11 U.S.C. § 1322(c)(2)] appears to contemplate mortgages which mature post-petition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objections of bankruptcy, suggest that Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date. ... [B]ased upon the legislative history, the stated objectives of Chapter 13, and Congress' preference for a Chapter 13 filing rather than [] Chapter 7, that Congress intended to allow debtors to cure a mortgage indebtedness which mature[d] or ballooned prepetition by providing for full payment [] to the mortgagee over the life of the Chapter 13 Plan.[16]

Unlike *Carter* or *Wilcox*, the obligations owed in this case were contracted by Debtor and are fully executable against her. The contract provides that upon default, RMS may declare the contract fully accelerated. Acceleration is a remedy on default which RMS argues cannot be unwound under HUD regulations. RMS offers no legal support for its position, and its own contract and the jurisprudence are squarely at odds with its assertions.

The *Grubbs* Court provides an exhaustive legislative history of section 1322(b). The *en banc* Fifth Circuit determined Congress' intent was to allow the cure of accelerated debt upon the filing, distinguishing between the power to "cure" and "de-accelerate" and section 1322(b)'s prohibition against modification of a mortgagee's rights.[17] In its opinion, the Fifth Circuit explained:

> [W]e should note that the clause, "on which the last payment is due," can be interpreted, as a matter of preempting federal bankruptcy law, to mean "on which the last payment before acceleration is due."[18]

---

[16] *Id*. at 183 (quoting *In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn. 1995)).

[17] 730 F.2d at 242-246.

[18] *Id.* at 241 n.7.

*Grubbs* specifically rejected the notion that state laws, or in this case federal regulations, would determine the effect of the creditor's acceleration and the debtor's ability to cure his default.[19]

> To permit, for chapter 13 purposes, the variations of the laws of the different states to govern the effect of an acceleration and its curability, would be to defeat one of Congress' important purposes, in exercising its preemptive bankruptcy powers under the federal constitution, to provide by chapter 13 a uniform national remedy ... by which to adjust the debts of individuals with regular incomes as an alternative to them being forced to undergo liquidating bankruptcy. H. Rep. No. 595, 95th Cong., 1st Sess. 4-5, 116-21 (1977); 5 Collier on Bankruptcy, ¶ 1300.01 (5th ed. 1983). Along with the *Taddeo* panel, "[w]e do not believe that Congress labored for five years over this controversial question only to remit consumer debtors-intended to be primary beneficiaries of the new Code-to the harsher mercies of state law." 685 F.2d at 25.[20]

Debtor has proposed a plan which fully satisfies all amounts due prepetition and places the loan contractually current on its completion. As a result, RMS' rights are not modified and the provisions of 11 U.S.C. § 1322(c)(2) are honored. For these reasons and in accordance with the cases cited above, the Motion to Lift Stay filed by RMS is denied. An Order in accord with these Reasons will be separately rendered.

New Orleans, Louisiana, February 24, 2010.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[19] *Id*. at. 240-241.

[20] *Id*. at 241 n.9.